124 N.J. Super. 16 (1973)
304 A.2d 573
IN THE MATTER OF THE PRESENTMENT OF THE CAMDEN COUNTY GRAND JURY, JANUARY STATED SESSION, 1970 TERM, PANEL B, IN RE THE PENNSAUKEN POLICE DEPARTMENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 3, 1973.
Decided May 11, 1973.
*17 Before Judges KOLOVSKY, MATTHEWS and CRAHAY.
Messrs. McGuire, Green & Young, attorneys for appellants (Mr. Thomas F. McGuire on the brief).
Mr. Thomas J. Shusted, Camden County Prosecutor, attorney for respondent (Mr. Archibald Krieger, Assistant Prosecutor, of counsel).
PER CURIAM.
Appellants, 43 out of the 56 members of the Pennsauken Police Department, on May 11, 1972 "petitioned" the assignment judge to expunge a paragraph in a presentment handed up by the Camden County grand jury in January 1972, claiming that it constituted an improper and unfair censure of them. Then Assignment Judge Schalick denied the motion, generating this appeal.
In November 1970 a survey of the Pennsauken Township Police Department was conducted by one Walter V. McLaughlin, *18 a law-enforcement consultant, at the request of the township committee. Its stated purpose was two-fold: (1) to determine the conditions and causes affecting the morale of the Pennsauken Police Department, and (2) to examine generally the existing police organization. The McLaughlin report, consisting of 97 pages, extensively reviewed every facet of the operation of the Pennsauken Police Department. The report was subpoenaed before the September 1970 term of the Camden County grand jury and incorporated by reference into the involved presentment. After reviewing the presentment as required by the rules, (R. 3:6-9), Judge Schalick on January 26, 1972 released the presentment and provided for its distribution.
The presentment provided in part;
* * * The Grand Jury heard testimony from every member of the Pennsauken Police Department and numerous other witnesses. The investigation had been requested by a majority of the members of the Pennsauken Police Department and other citizens of Pennsauken Township.
The testimony has shown that some members of the Pennsauken Police Department engaged in criminal activities. Some of these members have been indicted, but in other instances, the Grand Jury did not feel they had sufficient evidence to indict, even though they were convinced that numerous members, either past or present, of the Department, had engaged in criminal activities. * * * [Emphasis added]
Appellants, by their "petition" to the assignment judge filed on May 11, 1972, challenged the italicized portion of the presentment and asked that it be expunged urging that "the Grand Jury abused its power and went beyond the bounds of a legal presentment in determining guilt of numerous officers." The petitioners claim that "The Camden County Grand Jury * * * in effect, wrongfully found numerous Police Officers guilty of criminal activity." On June 29, 1972 the assignment judge denied the "petition."
Appellants argue that since the presentment employs the term "numerous members," it taints the reputation of every member of the Pennsauken Police Department and *19 syllogize that each petitioner then as an individual has suffered public censure for a charge of criminal activity. The argument has no merit. As Assignment Judge Schalick noted, it was beyond the realm of reason to think that the challenged portion of the presentment dealt with ascertainable individuals.
Appellants' reliance on In re Presentment by Camden County Grand Jury, 34 N.J. 378 (1961) (Camden II), is misplaced. In Camden II, a readily identifiable individual, the City of Camden's Director of Public Safety, was effectively censured for his alleged official misconduct in connection with gambling activities. The court there noted that following In re Camden County Grand Jury, 10 N.J. 23 (1952) (Camden I), the Supreme Court amended then R.R. 3:3-9 et seq. regulating the filing practice respecting presentments. R.R. 3:3-9 is the source rule for R. 3:6-9, which now provides in pertinent part 

(a) Finding.
A presentment may be made only upon the concurrence of 12 or more jurors. It may refer to public affairs or conditions, but it may censure a public official only where his association with the deprecated public affairs or conditions is intimately and inescapably a part of them. * * *

* * *

(c) Examination; Reference Back; Striking.
Promptly and before the grand jury is discharged, the Assignment Judge shall examine the presentment. If it appears that a crime has been committed for which an indictment may be had, he shall refer the presentment back to the grand jury with appropriate instructions. If a public official is censured the proof must be conclusive that the existence of the condemned matter is inextricably related to non-criminal failure to discharge his public duty. If it appears that the presentment is false, or is based on partisan motives, or indulges in personalities without basis, or if other good cause appears, he shall strike the presentment either in full or in part. * * *

(d) Filing and Publication.
Such portions of the presentment as are not referred back to the grand jury for further action or are not stricken in accordance with paragraph (c) of this rule shall be filed and made public, and the Assignment Judge shall instruct the clerk of the grand jury to send copies thereof to such public bodies or officials as may be concerned *20 with the criticisms and recommendations made therein and to the Administrative Director of the Courts. * * * [Emphasis added]
Camden II, supra reversed the action of the assignment judge there for failure to order expungement in part or permit the individual censured from exercising his relief under the rule.
The majority held:
* * * the subject must be a matter of general public interest, or relate to some aspect of public affairs, or to some public evil or condition to which, in the discretion of the jury, the attention of the community should be directed. And censure of a public official is permissible only where it may be said with absolute certainty that his connection with the condemned matter is such that its existence is inextricably related to non-criminal failure to discharge his public duty. More particularly and by way of further qualification, the criticism of the individual is allowable only where it is integrally associated with the main purpose of the report, i.e., to draw critical attention to some undesirable condition in the affairs of the public. [at 391]
Chief Justice Weintraub in a concurring opinion said:
... Indeed the grand jury was invented to protect the individual against the ordeal of a trial of an arbitrary charge. But when a process thus designed to protect the individual against an unfounded charge is converted into a final trial and results in the condemnation of an individual, the basic purpose of a grand jury is subverted and indeed by a procedure wholly unsuitable as a vehicle for that final decision. [at 403; Emphasis added]
It will be seen then that emphasis is placed on protecting identifiable individuals from censure or reprobation for specific wrongdoing. It is a non sequitur to suggest that reference to "numerous members," "past or present," of the Pennsauken Police Department engaged in criminal activity, charges all or any of the appellants here with specified wrongdoing to which they may not defend. A grand jury's interest in the workings of a police department are the proper subject of comment in a presentment. In re *21 Presentment of Essex County Grand Jury, 46 N.J. 467, 475 (1966).
Appellants' argument that the assignment judge should have disqualified himself from hearing the expungement "petition" is frivolous. The presentment was made public by the assignment judge on January 26, 1972. The "petition" was filed on May 11, 1972, and while it was without a return date, was treated as a motion for expungement and heard on June 22, 1972. R. 3:6-9 (d) requires that the assignment judge file and make public presentments unless they are referred back to the grand jury for further action or are stricken in part or in whole under R. 3:6-9(c). Here, as noted, the assignment judge properly caused the presentment to be filed and made public, having determined that there was no specific crime or crimes committed which should have been returned to the grand jury for indictment, nor was any public official identified and censured.
Approximately five months after the publication of the presentment appellants "petitioned" the assignment judge for expungement of the allegedly offending statement. When the matter was called for argument appellants moved to have the assignment judge disqualify himself, on the grounds that he was in effect being called upon to reverse himself. Appellants noted that Assignment Judge Schalick was by repute "extremely competent and extremely fair" and that they had no doubt that he would decide the motion on its merits. R. 3:6-9 mandates that the assignment judge guide presentments to their appropriate conclusion. No authority is advanced to the contrary. Cf. In re Camden County Grand Jury, 10 N.J. 23 (1952).
R. 1:12-1, "Disqualification and Disability of Judges" provides in pertinent part 
The judge of any court shall disqualify himself on his own motion and shall not sit in any matter, if he * * *

* * *
(d) has given his opinion upon a matter in question in the action; * * *
*22 Paragraphs (c), (d) and (e) shall not prevent a judge from sitting because he has given his opinion in another action in which the same matter in controversy came in question or given his opinion on any questipn in controversy in the pending action in the course of previous proceedings therein, * * *.
Affirmed.